**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240092-U

Order filed December 8, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0092 Circuit No. 22-CF-1254 |
| VINCENT L. WINTERS, | ) ) ) | Honorable Sarah-Marie Francis Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Davenport and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in admitting other-crimes evidence that defendant committed aggravated criminal sexual assault to show defendant's propensity to commit the charged offenses of aggravated criminal sexual abuse and predatory criminal sexual assault of a child.

¶ 2    Defendant, Vincent L. Winters, appeals his aggravated criminal sexual abuse and predatory criminal sexual assault of a child convictions, arguing that the trial court abused its discretion by admitting evidence of other crimes. We affirm.

I. BACKGROUND

¶ 4        On October 11, 2017, the State charged defendant with four counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2016)) and four counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)). The indictments generally alleged that defendant placed his penis and finger in R.S.'s vagina, placed his mouth on R.S.'s vagina, and placed his finger in R.S.'s anus. Defendant proceeded as a self-represented litigant in the trial court.

¶ 5        On June 27, 2023, the State filed a motion pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2016)) to admit statements R.S. made related to the charges. The State asserted R.S. was five years old and at home with defendant on October 11, 2017, without her mother being present. R.S. related that defendant carried R.S. from her bed to the couch in the living room and removed her underwear. Defendant put his mouth and finger on R.S.'s vagina. Defendant stuck his tongue in R.S.'s mouth. Defendant put his penis inside her vagina and placed his hands on her buttocks. When R.S. told defendant that she was going to tell her mother, defendant "banged her head twice off the kitchen counter telling her to not tell what happened." Defendant put his hands on R.S.'s mouth and told her not to tell her mother. Defendant "made R.S. pinky swear she wouldn't tell." Following a hearing, the trial court granted the State's motion.

¶ 6        The State also filed a motion to admit other-crimes evidence pursuant to section 115-7.3 of the Code (*id.* § 115-7.3) to show defendant's propensity to commit sex offenses. In the motion, the State sought to admit defendant's conviction for aggravated criminal sexual assault in 1993 against L.M. Specifically, the State alleged that L.M. was 16 years old at the time of the offense. L.M. knew defendant through her sister, and defendant approached L.M. while she was walking home from school. Defendant offered to give L.M. a ride home and buy her food. Defendant took

L.M. to purchase food, then drove her to a motel. L.M. told defendant she wanted to go home and attempted to exit his vehicle. Defendant grabbed her hair and told her to stay in the vehicle. Defendant drove her to a room, grabbed her hair, and ordered her out of the vehicle. Once in the room, defendant forced L.M. to get into bed after she refused. When a struggle ensued, defendant threatened L.M., held her down by her throat, and slapped L.M. in the face, causing her nose to bleed. Defendant put his mouth on L.M.'s vagina and put his fingers and penis in her vagina. Defendant told L.M. that if she disclosed the sexual assault, he would kill her sister.

¶ 7 The State asserted that, while defendant's other crime occurred in 1993, and the present offense occurred in 2017, defendant had been sentenced to nine years' imprisonment and was released on October 8, 2003, mitigating the remoteness in time. The similarities between the offenses included that defendant (1) knew the minor victims, either being a friend of a family member or entrusted in the care of defendant; (2) performed similar sexual acts, in that defendant placed his mouth on the victims' vagina and put his fingers and penis inside the victims' vagina; and (3) exhibited violence by banging R.S.'s head on the counter and slapping L.M.'s face, in an effort to dissuade the disclosure of defendant's assaults. Defendant objected to the admission of the evidence, arguing that the prior conviction was not relevant to the present case, and generally objected to the State's discovery related to the 1993 offense and the proffered facts. The trial court granted the State's motion over defendant's objection, finding that "the probative value outweigh[ed] the prejudicial effects."

¶ 8 At defendant's trial, the majority of R.S.'s testimony and Children's Advocacy Center (CAC) victim sensitive interview entered into evidence was primarily consistent with the information proffered by the State's section 115-10 motion. See *supra* ¶ 5.

¶ 9        Specifically, R.S. testified that she recalled falling asleep while watching a movie and being woken up by defendant kissing her mouth. Defendant placed his penis "in [her] coochie," located "[b]etween [her] legs," and his finger "[i]n [her] butt." When R.S. awoke the following morning, defendant "tried to do nasty stuff" again. After R.S. refused, defendant "banged [her] head on the kitchen sink." Later, defendant "told [R.S.] to make a promise not to tell" and had R.S. "pinky promise."

¶ 10       The video-recorded CAC victim sensitive interview, which occurred shortly after the alleged abuse, was played for the jury. Therein, R.S. identified the vaginal area in an anatomy drawing for a girl as a "coochie." R.S. described defendant kissing her mouth by placing his tongue in her mouth, "lick[ing] [her] coochie," and placing his finger in her "coochie" and "butt." Defendant woke R.S. up by "lick[ing] [her] coochie" and "mov[ing] around" his tongue when she was lying on her back with her legs open. When defendant touched R.S.'s vagina and anus with his finger, he moved his finger "up and down." R.S. described defendant placing his penis in her "coochie." R.S. indicated that when defendant placed his penis in her vagina, defendant was lying on his back and R.S. was lying on defendant's stomach face down. After the described abuse, defendant hit her "hard."

¶ 11       When the State called L.M. to testify, defendant objected to the admission of L.M.'s testimony, stating that he "object[ed] to this slander." The court overruled defendant's objection and allowed L.M. to testify. Prior to her testimony, the trial court instructed the jury,

> "[E]vidence will be received that the defendant has been involved in an offense other than that charged in the indictment. This evidence will be received on the issue of the defendant's propensity and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in

that offense, and if so what weight should be given to this evidence on the issue of propensity."

L.M. proceeded to testify that defendant took her to get food and then drove her to a motel. Upon arrival, defendant retrieved a firearm from the glove compartment and told L.M. that he would kill her sister if L.M. exited the vehicle while he left the vehicle to obtain a hotel room key. When defendant returned, he ordered L.M. to exit the vehicle, enter the motel room, and to remove her clothing. When L.M. began crying, defendant "chok[ed]" L.M., "threw [her] on the bed and *** started hitting" her. Once on top of L.M., defendant placed his penis in her vagina. On cross-examination, L.M. indicated that she had told police about defendant's use of a firearm.

¶ 12    In its closing argument, the State limited its argument about the L.M. testimony to stating that defendant had sexually assaulted L.M. prior to R.S.

¶ 13    The jury found defendant guilty of three counts of predatory criminal sexual assault and three counts of aggravated criminal sexual abuse relating to the allegations that defendant placed his mouth on R.S.'s vagina and placed his fingers in R.S.'s vagina and anus. The jury found defendant not guilty of one count of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse related to placing his penis in R.S.'s vagina. Defendant filed a motion for a new trial, arguing, *inter alia*, that the court "[e]rred in refusing to grant the Defendant's Motion *in limine* to 'Exclude' [L.M.'s testimony] from Evidence at Trial." The trial court denied the motion for a new trial. At defendant's sentencing hearing, the State's evidence in aggravation included the L.M. conviction for aggravated criminal sexual assault which rendered him subject to mandatory life imprisonment pursuant to 720 ILCS 5/11-1.40(b)(2) (West 2016) (mandatory life sentence for predatory criminal sexual assault conviction where defendant previously convicted of aggravated criminal sexual assault). Additional convictions offered in

aggravation included penitentiary sentences for the following unrelated Will County cases: sex offender registry violations in 17 CF 2289 (10 years) and 2011 CF 912 (72 months); and aggravated domestic battery 01 CF 2001 (14 years).

¶ 14        Defendant was sentenced to natural life on the three predatory criminal sexual assault of a child counts concurrent to 14 years on each of the three aggravated criminal sexual abuse counts.

¶ 15                                                    II. ANALYSIS

¶ 16        On appeal, defendant argues that the trial court abused its discretion by admitting other-crimes evidence of his 1993 conviction for aggravated criminal sexual assault against L.M., asserting the acts were "unrelated and dissimilar" as evidenced by the age of the conviction and the underlying facts. Initially, we note that the State argues that defendant forfeited his claim by failing to properly object during trial proceedings. We disagree. Our review of the record shows that defendant orally objected to the admission of the other-crimes evidence at the *in limine* hearing on the State's motion, objected generally to L.M.'s testimony at trial, and again raised the issue in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for appeal, a defendant must raise it both at trial and in a written posttrial motion); see also *People v. Denson*, 2014 IL 116231, ¶ 11 ("a defendant preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion").

¶ 17        Evidence of a defendant's other crimes is generally inadmissible to show the defendant's propensity to commit the charged offense. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). However, section 115-7.3(a)(1) of the Code provides an exception to this rule when a defendant is accused of a sex offense, allowing "other-crimes evidence to protect society against sex offenders who have a propensity to repeat their crimes." *Id.* at 174 (citing 725 ILCS 5/115-7.3(a)(1) (West 2016)).

6

Thus, evidence of a defendant's past sex offense may be used to show the defendant's propensity if the prejudicial effect does not substantially outweigh the probative value. *Id.* at 182-83.

¶ 18    When determining whether the acts should be admitted, the court considers (1) the proximity in time to the charged offense, (2) the degree of factual similarity to the charged offense, or (3) other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2016). While a span of time may lessen the probative value of a prior conviction, this is mitigated where a defendant lacks the opportunity to commit other crimes based on his imprisonment between the prior conviction and the charged offense. *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 22. Additionally, "[a]s factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence." *Donoho*, 204 Ill. 2d at 184. We will not reverse the trial court's decision to admit other-crimes evidence unless the court abused its discretion. *People v. Ward*, 2011 IL 108690, ¶ 21. A trial court abuses its discretion where its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 19    In considering whether the trial court abused its discretion in admitting L.M.'s testimony, we initially observe that the 1993 conviction and the present offense were committed more than 24 years apart, a span of time defendant argues diminishes the probative value of the L.M. other-crimes evidence. In considering this passage of time, however, we observe that defendant committed the aggravated criminal sexual assault in 1993, and in 1996 was sentenced to nine years' imprisonment.[1] Defendant's lack of opportunity to commit crimes during his incarceration increases the probative value despite the age of the prior conviction. See *Lobdell*, 2017 IL App (3d) 150074, ¶ 22. Parenthetically, though not relayed to the trial court at the other-crimes motion

---

[1] The record rebuts defendant's contention that the State forfeited the argument that defendant's imprisonment diminished the prejudicial effect of the age of his prior conviction by not raising the argument below. See *supra* ¶ 7.

*in limine*, we observe that the court was informed at sentencing that defendant spent significant additional time in prison between completing the L.M. sentence and the instant offense. See *supra* ¶ 13. Setting aside this additional incarceration evidence, which the State failed to relate to the court in advance of the *in limine* ruling, it nevertheless remains that proximity in time alone does not necessarily render other crimes evidence too remote or prejudicial. See *Donoho*, 204 Ill. 2d at 184.

¶ 20     We also disagree with defendant that the two offenses are so dissimilar that the L.M. evidence was not probative. Both incidents generally involved minor girls who were familiar with defendant. Since the prior conviction was admitted for the purpose of propensity, general areas of similarity are sufficient to support admissibility. See *id.* While defendant exhibited different violent behavior toward L.M. and R.S., resulting in different degrees of physical harm, the relevance is that defendant generally used violence intended to prevent the victims from disclosing the abuse. See *id.* at 185 (the existence of some differences "does not defeat admissibility because no two independent crimes are identical"). Finally, as it relates to the *in limine* proffer, there was sufficient similarity between the sexual acts defendant committed against L.M. and the acts committed against R.S., including that both victims alleged defendant touched their genitals with his mouth, fingers, and penis. See *id.* at 184. Therefore, the trial court's decision to allow the other-crimes evidence related to L.M. was not so arbitrary, fanciful or unreasonable as to amount to an abuse of discretion. See *Ward*, 2011 IL 108690, ¶ 21.

¶ 21     In reaching this conclusion, we are cognizant that L.M.'s testimony deviated from the *in limine* proffer in a manner that might have caused the trial court to revisit its *in limine* ruling had defendant requested. See *People v. Drum,* 321 Ill. App. 3d 1005, 1008 (2001) (when a trial court addresses a pretrial motion *in limine* on the merits, its ruling is always subject to reconsideration

8

during trial). L.M.'s testimony at trial both added to the proffer and left out sex acts that made the L.M. other-crimes evidence less probative and more prejudicial. Specifically, L.M. testified that defendant used a gun to coerce her and testified that he vaginally penetrated her with his penis. That having been said, there was no contemporaneous objection with respect to these discrepancies and no motion to reconsider the *in limine* ruling or otherwise address these discrepancies. Nor did defendant raise these discrepancies in his post-trial motions. Accordingly, defendant's arguments in this regard are forfeited. See *People v. Russell*, 385 Ill. App. 3d 468, 472 (2008) ("In order to preserve an issue for appeal, a defendant must raise it both in a contemporaneous objection and a written posttrial motion."). Essentially, defendant now, for the first time on appeal, seeks to expand his objection to the admissibility of other-crimes evidence to include an objection to the scope of L.M.'s testimony—an objection he never made at trial. We note that defendant proceeded as a self-represented litigant in the trial court and thus cannot assert an ineffective-assistance-of-counsel claim. Rather, "where a defendant elects to proceed *pro se*, he is responsible for his representation and is held to the same standards as any attorney." *People v. Richardson*, 2011 IL App (4th) 100358, ¶ 12.

¶ 22 Even assuming, *arguendo*, that the trial court erred in allowing the other-crimes evidence, any such error was harmless in the context of the entirety of the record. See *People v. McBride*, 2020 IL App (2d) 170873, ¶¶ 34-40. Here, the evidence presented regarding the offenses against R.S. was overwhelming. R.S. testified consistently with her CAC interview that defendant touched her genitals with his fingers and penis. Additionally, the CAC interview showed five-year-old R.S. describing with specificity sexual acts a 5 year-old child should have no knowledge of, including how their bodies were positioned when he placed his penis in her "coochie", how defendant moved his fingers "up and down" in her vagina and anus and "moved around" his tongue to "lick[ ] [her]

coochie," and how he placed his finger in her butt. Moreover, R.S.'s outcry was made within a day notwithstanding the pinky-swear and defendant threatening her by banging her head on the sink. Given the testimony, it was clear beyond a reasonable doubt that defendant committed aggravated criminal sexual abuse and predatory criminal sexual assault of a child related to defendant touching R.S.'s genitals with his mouth and fingers, and any error in admitting L.M.'s testimony was harmless.

¶ 23    In so concluding, we note that the State did not overemphasize L.M.'s testimony in their closing argument, indicating only that R.S. was not the first person defendant sexually assaulted but not otherwise discussing the facts testified to by L.M. Moreover, the trial court instructed the jury to consider L.M.'s testimony only for the limited purpose of propensity, mitigating any prejudicial effect of incongruent or potentially prejudicial evidence. See *People v. Taylor*, 166 Ill. 2d 414, 438 (1995) ("The jury is presumed to follow the instructions that the court gives it.").

¶ 24                              III. CONCLUSION

¶ 25    The judgment of the circuit court of Will County is affirmed.

¶ 26    Affirmed.