2021 IL App (2d) 190068-U
No. 2-19-0068
Order filed April 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) ) | Nos. 18-CF-55 18-CM-92 18-CM-94 18-CM-95 |
| ANTHONY M. ELLIS, | ) ) | Honorable Michael P. Bald, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  At defendant's trial for home invasion for breaking into the victim, his ex-wife's, home in 2018 and threatening her with a knife, the trial court erred in admitting as, propensity evidence under section 115-20, defendant's 2017 conviction for domestic battery, where the prior incident involved dissimilar conduct, namely defendant touching the victim inappropriately but nonviolently. However, the error was harmless because, on the one element that defendant contested—whether he was armed with a knife when he broke into the home—the State's evidence was substantial such that defendant was not prejudiced.

¶ 2 Defendant, Anthony M. Ellis, appeals from his convictions in the circuit court of Stephenson County of home invasion (720 ILCS 5/19-6(a)(1) (West 2018)), battery (720 ILCS 5/12-3(a)(1) (West 2018)), aggravated assault (720 ILCS 5/12-2(c)(4) (West 2018)), and criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2018)). He contends that the trial court abused its discretion in admitting evidence of a 2017 domestic-battery conviction. Although it was error to admit evidence of the 2017 conviction, because the error was harmless, we affirm.

¶ 3                              I. BACKGROUND

¶ 4 Defendant was charged by information (case No. 18-CF-55) with two counts of home invasion based on being armed with a knife (720 ILCS 5/19-6(a)(1) (West 2018)) (counts I and III), and two counts of home invasion based on striking the victim, Ashley Goodman, in the face (720 ILCS 5/19-6(a)(2) (West 2018)) (counts II and IV). He was also charged via complaint with one count of battery against the victim, Ronald Goodman, (720 ILCS 5/12-3(a)(1) (West 2018)) (case No. 18-CM-92), one count of domestic battery against Ashley (720 ILCS 5/12-3.2(a) (West 2018)) (case No. 18-CM-93), one count of aggravated assault against Ashley (720 ILCS 5/12-2(c)(4) (West 2018)) (case No. 18-CM-94), and one count of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2018)) (case No. 18-CM-95). All charges related to an incident on February 20, 2018.

¶ 5 Before trial, the State moved to have admitted, pursuant to section 115-20 of the Code of Criminal Procedure (Code) (725 ILCS 5/115-20 (West 2018)), evidence of defendant's 2017 conviction for domestic battery against Ashley (case No. 17-CM-199). Attached to the motion was a copy of the information stating that the incident occurred on March 22, 2017. Also attached to the motion was a copy of a police report stating that while defendant was at the home of Ashley,

his ex-wife, he approached her from behind and pushed his groin into her buttocks and groped her lower abdomen.

¶ 6    The State also moved to have admitted, under section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2018)), evidence of a 2017 charge of domestic battery against defendant's son (case No. 17-CM-659). An attached copy of the complaint stated that on August 23, 2017, defendant allegedly struck his son with a belt.

¶ 7    At the argument on the State's motion, the prosecutor told the trial court that defendant had been convicted in case No. 17-CM-199 on February 17, 2018, just three days before he committed the charged acts in this case. The trial court issued a written order ruling on the State's motion. The court denied the motion to admit evidence of the charge in case No. 17-CM-659, because there was no conviction, and the factual situation was too different from this case. However, the court granted the motion to admit evidence of the domestic battery in case No. 17-CM-199:

> "Having conducted the weighing process, the Court notes that it was the same victim involved and though there is a lack of similarity as far as the actions of the defendant, the Court feels that the matter may be used for propensity evidence."

¶ 8    The following facts were established at defendant's bench trial. On February 20, 2018, Ashley and her husband, Ronald, lived with Ashley's and defendant's two children at 1539 South Float in Freeport. At approximately 6 a.m., Ashley was sleeping with her daughter in her daughter's bedroom when she heard glass breaking and a thud. When she went into the hall to investigate, she saw a man wearing a face mask, whom she later identified as defendant, entering through the back door.

¶ 9    Defendant approached Ashley with his hand raised. Ashley ran into the master bedroom where Ronald was sleeping. According to Ashley, she could see a knife in defendant's hand.

Ashley screamed that defendant had a knife and was trying to kill her. According to Ashley, defendant came toward her in the bedroom with a knife.

¶ 10    As Ashley stood against a wall, Ronald leapt from the bed and tackled defendant. As Ronald tried to subdue defendant, Ashley joined in. As they struggled with defendant, the knife fell on the bedroom floor. Ashley picked up the knife and placed it on the bed. Ronald testified that he never saw defendant with a knife. He did, however, see defendant's hand raised as he approached Ashley in the bedroom.

¶ 11    Defendant then escaped and ran into the kitchen/office area. Ronald chased him and took him to the floor. The floor was covered with shards of glass from a window that defendant broke to enter the home. Ronald, who was clad only in boxers, suffered numerous cuts from the glass. As Ronald struggled to control defendant, Ashley retrieved the knife from the bedroom and held it against defendant's groin. She did so to try to get defendant to stop fighting. Once defendant realized that Ashley was holding the knife to his groin, he put his arms down to try to stop her from stabbing him. When he did, Ronald was able to gain control of him.

¶ 12    As Ashley and Ronald struggled with defendant, Ashley's son called 911. Ashley testified that, after the police arrived and restrained defendant, she put the knife on a nearby desk. Later, the police showed Ronald a knife and asked if it was his. Ronald had not seen the knife before. At trial, both Ronald and Ashley were shown a photo of a knife with a blue handle. Ashley identified it as the knife defendant had with him inside the house. Ronald identified it as the knife that the police showed him. Both Ronald and Ashley denied that they owned any knife like the one depicted. A police officer later searched defendant's home "for similar knives in case [the] knife came out of a set." The officer did not see any similar knives.

¶ 13    Ashley claimed that her lower leg was cut by the knife during the struggle. On cross-examination, she admitted that she did not know when her leg was cut with the knife.

¶ 14    On further cross-examination, Ashley admitted that she said in a written statement in an order-of-protection case that the knife fell on the bed. She reiterated, however, that the knife fell on the floor and ended up on the bed. She did not recall telling the police that defendant dropped the knife on the floor in the office area. She repeated that defendant dropped the knife in the bedroom.

¶ 15    Ashley testified to the facts regarding defendant's 2017 domestic-battery conviction. According to her, defendant had come to her house to discuss visitation of the children. While in the kitchen, defendant approached her from behind and pushed his pelvis toward her bottom. Defendant also touched her with his hands. She inferred from his actions that he wanted to have sex with her. When she told defendant to leave, he sat on the sofa and patted the sofa as to invite her to sit down next to him. She then called the police who arrested defendant as he was leaving.

¶ 16    During closing argument, the prosecutor stated that defendant's actions and "prior history with [Ashley]" showed that he intended to cause her harm during the February 20, 2018, incident.

¶ 17    The trial court found that, because the State failed to prove that defendant struck Ashley in the face, defendant was not guilty of home invasion as alleged in counts II and IV. The court found, however, that, because defendant was armed with a knife, he was guilty of home invasion as alleged in counts I and III. In doing so, the court found Ashley to be "believable." The court further found defendant not guilty of domestic battery but guilty of battery against Ronald, aggravated assault against Ashley, and criminal damage to property.

¶ 18    Defendant filed a motion for a new trial, contending, among other things, that the trial court erred in admitting evidence of defendant's 2017 domestic-battery conviction. The trial court

denied the motion. The court found that count III merged into count I, and the court sentenced defendant to 12 years' imprisonment on count I. The court also imposed concurrent 180-day jail terms for each of the three misdemeanor convictions. Defendant, in turn, filed this timely appeal.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, defendant contends that the trial court abused its discretion in admitting evidence of defendant's conviction of domestic battery. The State responds that evidence of the prior domestic battery was properly admitted under section 115-20, and, even if not, it was harmless error.

¶ 21    Generally, other-crimes evidence is not admissible to show the defendant's character or propensity to commit crime. Ill. R. Evid. 404 (eff. Jan. 1, 2011); *People v. Ross*, 2018 IL App (2d) 161079, ¶ 164 (citing *People v. Illgen*, 145 Ill. 2d 353, 364 (1991)). Notwithstanding the general prohibition on other-crimes evidence, such evidence is admissible to prove character or propensity under section 115-20 of the Code. 725 ILCS 5/115-20 (West 2018); *Ross*, 2018 IL App (2d) 161079, ¶ 164. Section 115-20(a) provides, in pertinent part, that a defendant's prior domestic-battery conviction is admissible in a later criminal prosecution involving the same victim. 725 ILCS 5/115-20(a) (West 2018). Such evidence may be considered for its bearing on any relevant matter. 725 ILCS 5/115-20(b) (West 2018). Section 115-20 abrogates the common-law rule against propensity evidence as long as the evidence is relevant and its probative value is not substantially outweighed by the risk of undue prejudice. *People v. Chapman*, 2012 IL 111896, ¶ 20. In weighing the probative value against undue prejudice to the defendant, the court may consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; and (3) other relevant facts and circumstances. 725 ILCS 5/115-20(c) (West 2018).

¶ 22      A trial court's decision to admit other-crimes evidence will not be reversed unless the court clearly abused its discretion. *Illgen*, 145 Ill. 2d at 364. An abuse of discretion will be found only where the trial court's decision was arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's view. *Illgen*, 145 Ill. 2d at 364. Reasonable minds can differ about whether other-crimes evidence is admissible without requiring reversal under the abuse-of-discretion standard. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 23      Improperly admitted other-crimes evidence is harmless error where the defendant is neither prejudiced nor denied a fair trial because of its admission. *People v. Nieves*, 193 Ill. 2d 513, 530 (2000). The prejudicial effect of erroneously admitted other-crimes evidence can be offset by "substantial evidence of [the] defendant's guilt." *Nieves*, 193 Ill. 2d at 530.

¶ 24      Here, it does not appear that the trial court properly weighed the three factors under section 115-20 before admitting evidence of defendant's domestic-battery conviction. In its written order, the court stated merely that it "conducted the weighing process." It did not mention the proximity in time between the prior conviction and the charge in this case (see 725 ILCS 5/115-20(c)(1) (West 2018)), nor did it discuss any other relevant facts and circumstances (see 725 ILCS 115-20(c)(3) (West 2018)). The court noted that the victim was the same though the offenses lacked similarity "as far as the actions of the defendant." However, a common victim is a threshold requirement for admission under section 115-20 (see 725 ILCS 5/115-20(a) (West 2018)). It would be redundant for a court to further consider it as a factor of similarity.

¶ 25      Moreover, although mere general areas of similarity will suffice to support admission of other-crimes evidence (see *Donoho*, 204 Ill. 2d at 184), the two offenses here were not factually similar. In the prior domestic-battery case, defendant was consensually in Ashley's home during the day to discuss child visitation. Here, defendant damaged property when he forcibly broke into

Ashley's home in the early morning. He wore a mask and violently attacked Ashley with a knife. Although defendant touched Ashley inappropriately in the prior case, it was neither violent nor physically harmful. Although the State asserts that both offenses involved defendant's reaction to child custody and visitation issues, the record does not indicate that defendant's actions here were a reaction to custody or visitation issues. Other than the same victim, which is not a proper consideration under section 115-20(c)(2), the two cases were not sufficiently similar to justify admission of the prior domestic-battery conviction. As for proximity of time, the 2017 domestic-battery conviction was less than one year old. That certainly favored admission. See *Donoho*, 204 Ill. 2d at 184 (admission of other-crimes evidence as old as 15 to 20 years deemed proper). However, that factor alone was not so compelling as to justify admission of the 2017 conviction, and there were no other facts or circumstances justifying admission under section 115-20. Thus, the trial court abused its discretion in admitting defendant's domestic-battery conviction under section 115-20.

¶ 26    Having concluded that the trial court erred in admitting the domestic-battery conviction, we address whether the error was harmless. It was.

¶ 27    As discussed, erroneous admission of other-crimes evidence is harmless where a defendant is neither prejudiced nor denied a fair trial. See *Nieves*, 193 Ill. 2d at 530. Further, any such error is harmless if there is substantial evidence of defendant's guilt. See *Nieves*, 193 Ill. 2d at 530-31.

¶ 28    Here, in contending that the error was not harmless, defendant asserts that the evidence was "closely balanced" on whether he was armed with a knife. We disagree.

¶ 29    Ashley testified that she saw a knife in defendant's hand. According to her, defendant held it in his raised hand and only dropped it during the struggle in the bedroom. Although Ronald testified that he did not see the knife, he did testify that he saw defendant with his hand raised as

he chased Ashley inside the bedroom. Further, a blue-handled knife was found at the scene that did not belong to the victims. The mere fact that it did not match any knives found at defendant's residence did not necessarily show that it was not a knife carried by defendant during the attack. Although Ashley admitted that she had said in a previous statement that the knife fell on the bed, she persisted in her testimony that it fell on the floor and she put it on the bed. When asked if she told the police that defendant dropped the knife in the office, she did not recall saying that and reiterated that defendant dropped the knife in the bedroom. Considering the violent and disruptive nature of the attack, such minor inconsistencies as to when defendant dropped the knife, did not effectively impeach Ashley's credibility regarding whether she saw defendant with a knife. More importantly, the trial court found Ashley credible in that regard. Thus, there was substantial evidence that defendant was armed with a knife.

¶ 30    Not only was there substantial evidence of defendant's guilt, but there was no undue prejudice from admission of the domestic-battery conviction. The State briefly mentioned defendant's "history with [Ashley]" in its closing argument. Further, the trial court never referred to the 2017 conviction in finding defendant guilty. Because there was substantial evidence of defendant's guilt, and the admission of the 2017 domestic-battery conviction did not unduly prejudice defendant, the error in its admission was harmless.

¶ 31                                   III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Stephenson County.

¶ 33    Affirmed.